813 So.2d 85 (2002)
THE FLORIDA BAR, Complainant,
v.
Peter Ellis KELLY, Respondent.
No. SC96940.
Supreme Court of Florida.
March 7, 2002.
*86 John F. Harkness, Jr., Executive Director, and John A. Boggs, Director of Lawyer Regulation, Tallahassee, FL; and Stephen Christopher Whalen, Assistant Staff Counsel, Tampa, FL, for Complainant.
Peter E. Kelly, pro se, Sanibel, Florida, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Peter Ellis Kelly. We have jurisdiction. See art. V, § 15, Fla. Const.
The Florida Bar filed a three-count complaint against Peter Ellis Kelly alleging that he violated various Rules Regulating the Florida Bar in representing a client in a workers' compensation claim, in bringing a lawsuit against that client, and in failing to follow trust accounting procedures.

FACTS
After a hearing, the referee made the following findings:
Count IKelly entered into a contingency fee agreement to represent Gregory Halderman in a workers' compensation suit involving an eye injury. The agreement provided that Kelly would receive 33 1/3% of the gross amount recovered in the case. Pursuant to section 440.34, Florida Statutes (1995), Kelly was required to file a workers' compensation agreement regarding his fee with the workers' compensation court or file a notice of appearance, and to obtain prior approval from the workers' compensation judge. The referee found that Kelly failed to file such an agreement or notice and was therefore precluded from obtaining any fees whatsoever for handling the workers' compensation claim without prior approval from the workers' compensation judge.
After Kelly filed a workers' compensation claim on behalf of Halderman, Kelly received two checks payable to Halderman from Riscorp, the workers' compensation carrier. The referee found that Kelly failed to forward these checks to Halderman in a timely manner, delaying until after the checks had expired, and, in doing so, failed to safeguard Halderman's property.
In a letter dated April 4, 1998, Halderman terminated Kelly's representation and requested certain papers. The referee found that Kelly failed to surrender the papers and property to Halderman and his new attorney, Robert Keezel, in a timely manner. The referee found that Kelly, without legal justification, withheld Halderman's file from Keezel for five months, even after Kelly had been notified by the Bar that the grievance committee was investigating several issues, including whether there was probable cause to believe that Kelly violated the rules by failing to surrender property and papers to Halderman or his new counsel.
As to count I the referee recommended that Kelly be found guilty of violating rules 4-1.5(a) (a lawyer shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee), 4-1.15(a) (failure to safeguard client property and commingling client funds), 4-1.16(d) (protecting client's interest upon termination of representation), and 4-8.4(d) (engaging in conduct prejudicial to the administration of justice).
*87 Count IIThe referee found that Kelly had filed a five-count civil action against Halderman and his wife, Delores Halderman, that lacked justiciable issues. The referee noted the civil action was filed almost one year after Halderman discharged Kelly and was filed after Halderman had submitted his grievance to the Bar.
In the first count of Kelly's complaint, along with other claims, he alleged that he was entitled to $50,000 for "loss of the contingency amount due him from a settlement" and for Halderman's cancellation of the agreement. In the second count of Kelly's cause of action, he sought damages from Halderman based on quantum meruit. The referee found the first and second counts to be frivolous because Kelly was suing to enforce an illegal fee in a court that did not have jurisdiction over the issue. The referee found that Kelly had not petitioned the workers' compensation court for approval of his fee and had not submitted his fee agreement for approval.
In the third count of Kelly's civil action, he sued Delores Halderman, claiming that she interfered with Kelly's contract because she "advised" her husband, Halderman, to terminate Kelly's services. The referee found this count to be frivolous because Kelly sought damages against his former client in retaliation for exercising his lawful right to terminate representation and seek new counsel.
In Kelly's fourth count, he sued Halderman for $500,000 for filing a false grievance against him with The Florida Bar. The referee found this count frivolous because Halderman is immune from suit pursuant to this Court's opinion in Tobkin v. Jarboe, 710 So.2d 975 (Fla.1998). The Bar provided Kelly with the cite for the Tobkin opinion no later than March 24, 1999, less than two months after Kelly had filed his lawsuit. On March 24, 1999, Kelly acknowledged in a letter to the Bar that he had been informed of the immunity issue and of the Tobkin decision. Although Kelly indicated he would read the decision and determine whether his lawsuit complied with the opinion, he later testified that he was not sure he ever read Tobkin.
In the fifth count of his civil action, Kelly sued Halderman for an additional $500,000 for allegedly misrepresenting the existence of a preexisting eye injury. Kelly alleged that Halderman "deliberately misrepresented the truth" to him and "allowed him to continue to work on the case under false pretenses." The referee found that Kelly knew or should have known about Halderman's prior injury and that the information was available in the medical records. Further, the referee found that even assuming Halderman purposely had withheld information concerning the prior injury from Kelly, it would not have created a valid basis for a cause of action. Additionally, the referee found that Kelly's challenge to Halderman's veracity potentially created a conflict of interest between Kelly and his client because, if the lawsuit had been discovered by the workers' compensation carrier, Kelly could have become a witness against his client concerning Halderman's credibility. The referee found that Kelly was prohibited under rule 4-1.6 (Confidentiality of Information) from revealing an opinion based on confidential information regarding his client's veracity. The referee also found that Kelly could not claim he was permitted under rule 4-1.6(c)(2)[1] to make such disclosures, because the conduct Kelly accused Halderman *88 of committing did not establish a cause of action.
As to count II the referee recommended that Kelly be found guilty of violating rules 4-1.6(a) (revealing confidential information without consent), 4-1.16(d) (failing to protect client's interest upon termination of representation), 4-3.1 (bringing a frivolous action), 4-8.4(d) (conduct prejudicial to the administration of justice), and 4-8.4(g) (failure to respond in writing to an inquiry by a disciplinary agency).
Count IIIThe record shows that the Bar conducted an audit of Kelly's trust account and charged Kelly with failing to preserve duplicate deposit slips for deposits made to his trust account, failing to maintain a cash receipts and disbursements journal for trust account funds, failing to maintain client ledger cards, and failing to make any monthly comparisons between the total of reconciled balances of all trust accounts and the total of trust account ledger cards.
The referee did not express clear factual findings as to count III. However, she compared the differences in the testimonies and made recommendations that Kelly be found guilty of violating rules 5-1.1(d) (minimum trust account records shall be maintained), 5-1.2(b)(2) (a lawyer shall maintain original or duplicate deposit slips), 5-1.2(b)(4) (documentary support for all disbursements and transfers from the trust account), 5-1.2(b)(5) (a lawyer shall maintain a separate cash receipts and disbursements journal), 5-1.2(b)(6) (a lawyer shall maintain a separate file or ledger card for each client or matter), and 5-1.2(c) (minimum trust accounting procedures shall be followed by all attorneys practicing in Florida). Thus, we conclude that for the referee to have reached her recommendations of guilt for this count, the referee had to have found that Kelly failed to maintain the trust account records as alleged by the Bar in its complaint.
The referee recommended that Kelly be suspended for sixty days followed by probation for one year and completion of the Bar's ethics school trust accounting course. The referee also recommended that Kelly retain, at his cost, the services of a certified public accountant approved by the Bar during the period of his probation to provide quarterly reports to the Bar indicating whether Kelly's trust account is in compliance with the Rules Regulating Trust Accounts. The referee recommended that costs be awarded to the Bar in the amount of $6,083.63.
The Bar petitioned for review, contesting the referee's recommendation as to discipline and arguing that a ninety-one-day, rather than a sixty-day, suspension is the appropriate punishment for Kelly's misconduct.

ANALYSIS
As a preliminary matter, neither party contests the referee's recommended findings of fact or recommendations as to guilt for the violations of rules 4-1.5(a), 4-1.6(a), 4-1.16(d), 4-3.1, 4-8.4(d), 5-1.1(d), 5-1.2(b)(2), 5-1.2(b)(4), 5-1.2(b)(5), 5-1.2(b)(6), and 5-1.2(c). Therefore, we approve the findings of fact and recommendations of guilt as to these violations.
We disapprove the referee's recommendation that Kelly be found guilty of violating rule 4-8.4(g) (failure to respond in writing to an official inquiry by bar counsel or a disciplinary agency). The Bar stated that this was a scrivener's error in the Bar's proposed report to the referee, which the referee adopted in part. A rule 4-8.4(g) violation was never pled in the complaint and no evidence was presented on such a violation. Therefore, we disapprove the recommendation of this rule violation.
*89 Next, we question the referee's recommendation that Kelly be found guilty of violating rule 4-1.15(a). We have the authority to raise this issue and to review the record to determine if "competent substantial evidence supports the referee's findings of fact and conclusions concerning guilt." Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). The referee found that the "failure of [Kelly] to appropriately protect Halderman's property (Riscorp checks) by failing to forward them in a timely manner [was] sufficient evidence to establish that he violated Rule 4-1.15(a)." We disagree.
Rule 4-1.15(a) (Clients' and Third Party Funds to be Held in Trust) describes how an attorney should properly safeguard a client's or third party's funds or property.[2] However, this rule does not impose a duty on an attorney to deliver client funds in a timely manner. Thus, we disapprove the referee's recommendation that Kelly be found guilty of violating rule 4-1.15(a) and conclude that he did not violate the rule.
We now consider the Bar's argument that the referee's recommendation of a sixty-day suspension is insufficient considering the scope and gravity of Kelly's misconduct, the numerous aggravating factors found by the referee, and the absence of significant mitigating factors. In reaching her recommendation of a sixty-day suspension, the referee found, pursuant to the Florida Standards for Imposing Lawyer Sanctions, the following aggravating factors: 9.22(b), dishonest or selfish motive; 9.22(c), pattern of misconduct; 9.22(d), multiple offenses; 9.22(e), bad faith obstruction of the disciplinary proceedings; 9.22(g), lack of remorse; 9.22(h), vulnerability of victim; and 9.22(i), substantial experience in the practice of law. In mitigation the referee found the absence of a prior disciplinary history. See Fla. Stds. Imposing Law. Sancs. 9.32(a).
The Bar argues that a ninety-one-day rehabilitative suspension is supported by the case law, the record, the aggravating and mitigating factors found by the referee, and the Florida Standards for Imposing Lawyer Sanctions. The Bar notes that this Court suspended an attorney for sixty days for bringing a frivolous lawsuit in federal court, see Florida Bar v. Richardson, 591 So.2d 908 (Fla.1991), but argues that Kelly's misconduct was much more egregious. The Bar argues that Kelly not only filed a frivolous and harassing lawsuit, but he delayed turning over documents to Halderman's new counsel, failed to maintain required trust account records, improperly accused his client of being dishonest in a public document, and sought to obtain a fee that was not permissible under applicable law.
Generally speaking, this Court "will not second-guess a referee's recommended *90 discipline as long as that discipline has a reasonable basis in existing caselaw." Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). "In making this determination, this Court considers not only caselaw but also the Florida Standards for Imposing Lawyer Sanctions." Id. Further, it is well established that in reviewing a referee's recommendation of discipline, this Court's "scope of review is somewhat broader than that afforded to findings of facts because, ultimately, it is [the Court's] responsibility to order an appropriate punishment." Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989). "Discipline must be fair to the public and to the respondent and must be severe enough to deter others who might be prone or tempted to become involved in like violations." Id. (emphasis in original). Unfortunately, the referee did not provide any case law in support of her disciplinary recommendation. We agree with the Bar that a sixty-day suspension is not severe enough in the present case.
In Richardson, the attorney was suspended for sixty days for filing a "frivolous and malicious" lawsuit in federal court. Id. at 910-11. At first glance, one might argue that Richardson could serve as a basis to support a sixty-day suspension. However, in imposing the sixty-day suspension in Richardson, the Court reduced the referee's recommendation of a ninety-one-day suspension because Richardson previously had been suspended for ninety-one days based on the same set of facts. Id. at 911. In the instant case, Kelly has not been disciplined before on these facts. Therefore, the unique facts of Richardson lead us to conclude that in applying it to the instant case, which involves multiple violations and no prior disciplinary action based on these facts, Kelly's misconduct warrants more substantial discipline than a sixty-day suspension. Indeed, the considerable aggravating factors in this case also compel a greater sanction than that recommended by the referee. See Fla. Stds. Imposing Law. Sancs. 9.1 ("After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."), 9.21 ("Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed."). In light of the multiple acts of misconduct and aggravating factors, we disapprove the referee's recommendation of a sixty-day suspension and conclude that a ninety-one-day rehabilitative suspension is appropriate.

CONCLUSION
Accordingly, we approve the referee's recommended findings of fact and recommendations of guilt as to the violations of rules 4-1.5(a), 4-1.6(a), 4-1.16(d), 4-3.1, 4-8.4(d), 5-1.1(d), 5-1.2(b)(2), 5-1.2(b)(4), 5-1.2(b)(5), 5-1.2(b)(6), and 5-1.2(c). We disapprove the referee's recommendations that Kelly be found guilty of violating rules 4-1.15(a) and 4-8.4(g), and we find him not guilty of violating these rules. Further, we disapprove the referee's recommended discipline of a sixty-day suspension.
Peter Ellis Kelly is hereby suspended from the practice of law for a period of ninety-one days, and must make an affirmative demonstration of rehabilitation, in addition to complying with the terms and conditions recommended by the referee, which include probation for one year and completion of The Florida Bar's ethics school trust accounting course. Further, during the period of probation, Kelly shall retain, at his cost, the services of a certified public accountant approved by the Bar to provide quarterly reports to the Bar indicating whether Kelly's trust account is in compliance with the Rules Regulating Trust Accounts. The suspension will be effective thirty days from the filing of this opinion so that Peter Ellis Kelly can close *91 out his practice and protect the interests of existing clients. If Peter Ellis Kelly notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Peter Ellis Kelly shall accept no new business from the date this opinion is filed until he is reinstated. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Peter Ellis Kelly in the amount of $6,083.63, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Rule 4-1.6(c)(2) provides:

A lawyer may reveal such information to the extent the lawyer reasonably believes necessary ... to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client.
[2] Rule 4-1.15(a) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation. All funds, including advances for costs and expenses, shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person, provided that funds may be separately held and maintained other than in a bank account if the lawyer receives written permission from the client to do so and provided that such written permission is received prior to maintaining the funds other than in a separate bank account. In no event may the lawyer commingle the client's funds with those of the lawyer or those of the lawyer's law firm. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property, including client funds not maintained in a separate bank account, shall be kept by the lawyer and shall be preserved for a period of 6 years after termination of the representation.